# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

November 24, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: A.D., O.T., & L.T.**

**No. 14-0507** (Nicholas County 13-JA-98, 13-JA-99, & 13-JA-100)

## MEMORANDUM DECISION

Petitioner Mother, by counsel E. Lavoyd Morgan Jr, appeals the Circuit Court of Nicholas County's April 28, 2014, order terminating her parental rights to her fifteen-year-old daughter, A.D., her five-year-old daughter, O.T., and her five-year-old son, L.T. The guardian ad litem for the children, Cammie Chapman, filed a response supporting the circuit court's order. The Department of Health and Human Resources ("DHHR"), by its attorney S.L. Evans, filed a summary response in support of the circuit court order. Petitioner Mother filed a reply. On appeal, Petitioner Mother argues that the circuit court erred in denying her a post-adjudicatory improvement period, terminating her parental rights, and finding that aggravated circumstances existed.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2013, the DHHR filed an abuse and neglect petition alleging that Petitioner Mother failed to protect A.D. and provide proper care to her other children. Specifically, the petition alleged that Petitioner Mother allowed her boyfriend, R.T., to live in her home and care for the children knowing that he was a registered sex offender.[1] Further, the petition alleged that R.T. sexually abused A.D. approximately two to three times per week over a three-year period.[2] The following month, the DHHR filed an amended petition alleging that Petitioner Mother verbally and/or emotionally abused A.D. According to the amended petition,

---

[1]R.T. was required to register as a sex offender as a result of a 2002 conviction for third degree sexual assault, for which he was sentenced to two consecutive terms of one to five years in prison.

[2]R.T. was charged with nine counts of failing to register as a sexual offender and twenty-five counts each of second degree sexual assault and sexual abuse/assault by a parent, guardian, or custodian stemming from the allegations involving A.D. According to the West Virginia Regional Jail and Correctional Facility website, R.T. is currently incarcerated and awaiting trial.

1

after Petitioner Mother discovered that A.D. was sexually abused, she made the following statements to A.D. over a period of time: "You wanted it;" "I don't understand why you're hurt, you're not the victim;" "I feel less of a woman. My man ran off with my daughter;" "The only thing that gets me by is knowing he made your first time special." On January 29, 2014, the circuit court held an adjudicatory hearing during which Petitioner Mother admitted that she failed to protect A.D. by allowing R.T. to live in her home and provide care for her children knowing that he was a registered sex offender.

The circuit court held a dispositional hearing on March 7, 2014, during which it heard testimony from psychologist Timothy Saar. After considering the parties' arguments, the circuit court continued the dispositional hearing to allow the parties to present additional evidence. During the reconvened dispositional hearing, the circuit court heard additional testimony from Petitioner Mother, A.D.'s therapist, and Petitioner Mother's service providers. After considering the testimony and the parties' arguments, the circuit court held that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future because Petitioner Mother failed to understand the emotional abuse that she inflicted upon A.D. Further, the circuit court found that the DHHR was not required to make reasonable efforts to reunify the family because aggravated circumstances existed due to Petitioner Mother's "chronic abuse." W.Va. Code § 49-6-5(a)(7)(A). It is from this order that Petitioner Mother now appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Upon our review, the Court finds no error in the circuit court's order denying Petitioner Mother's request for a post-adjudicatory improvement period. West Virginia Code § 49-6-12(b)(2) gives circuit courts discretion in granting post-adjudicatory improvement periods if the parent demonstrates, by clear and convincing evidence that they will fully participate in the improvement period. We have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). This Court has also held that "'in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses[.]' Syl. pt. 1, in part, *In re Travis W.,* 206 W.Va. 478, 525 S.E.2d 669." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000). Our review of the record shows that while Petitioner Mother's therapist testified that she accepted responsibility for her actions, the circuit court heard conflicting expert testimony that Petitioner Mother caused A.D. "to have significant depression" because she blamed A.D. for the sexual assault. The circuit court also heard testimony from a DHHR worker that Petitioner Mother does not fully understand how her actions impacted A.D. Further, Petitioner Mother's psychological evaluation revealed that "she has not taken responsibility for the circumstances that led up to the sexual assault . . . ." Based upon the evidence above, it is clear that Petitioner Mother failed to demonstrated that she would fully participate in the improvement period.

Next, Petitioner Mother argues that the circuit court erred in finding aggravated circumstances pursuant to West Virginia Code § 49-6-5(a)(7) because the conditions in the proceedings below are not as severe as those enumerated in the statute, and the term "chronic abuse" should be narrowly construed. We disagree. West Virginia Code § 49-6-5(a)(7)(A) provides, in relevant part, that "the [DHHR] is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has subjected the child . . . to aggravated circumstances which include, but are not limited to . . . chronic abuse." Further, West Virginia Code § 49-1-3(1)(A) defines an abused child as one whose health or welfare is harmed by "[a] parent . . . who knowingly or intentionally inflicts, attempts to inflict . . . mental or emotional injury, upon the child . . . ." The record shows a history of severe verbal abuse by Petitioner Mother and that, following the verbal abuse, A.D. was hospitalized on two different occasions due to "self-harm and suicidal thoughts." This evidence supported the circuit court's finding of aggravated circumstances based on chronic abuse.

Petitioner Mother also argues that the circuit court erred in terminating her parental rights to O.T. and L.T. because there was a least restrictive alternative pursuant to West Virginia Code § 49-6-5(a) and our holding in Syllabus Point One of *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).[3] However, Petitioner Mother's argument ignores our further directions regarding

---

[3]This Court previously held that

> [a]s a general rule the least restrictive alternative regarding parental rights to custody of a child under W.Va.Code, 49-6-5 (1977) will be employed; however, courts are not required to exhaust every speculative

termination upon findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future. This Court held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, *W.Va.Code, 49–6–5* [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under *W.Va.Code, 49–6–5(b)* [1977] that conditions of neglect or abuse can be substantially corrected." Syl. pt. 2, *In Re: R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 2, *In re Dejah P.*, 216 W.Va. 514, 607 S.E.2d 843 (2004). Furthermore,

> [w]here there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W. Va. Code [§] 49-1-3(a) (1994).

Syl. Pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995). Our review of the record shows no error in the circuit court's termination of Petitioner Mother's parental rights to all of her children. The record reflects that Petitioner Mother allowed her boyfriend, a known registered sex offender, to live in her home and care for the children; that the alleged sexual abuse of A.D. occurred while O.T. and L.T. were in the home; and Petitioner Mother chronically verbally abused A.D. resulting in multiple hospitalizations. Due to these aggravated circumstances, the DHHR was not required to make reasonable efforts to preserve the family. To the contrary, this evidence was sufficient to support the circuit court's finding that there was no reasonable likelihood to believe that conditions of abuse and neglect could be substantially corrected in the near future, and that termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6) and *In re Dejah P*, circuit courts are directed to terminate parental rights upon such findings.

Finally, Petitioner Mother argues that the circuit court erred in terminating her parental rights because it failed to consider the wishes of A.D. "The [circuit] court shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as

---

> possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.

Syl. Pt. 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

determined by the court regarding the permanent termination of parental rights." W.Va. Code § 49-6-5(a)(6)(C). However, "'[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syl. Pt. 2, *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013). It is clear that A.D. was approximately fifteen years old when the petition was filed and that the circuit court properly considered her wishes regarding the permanent termination of Petitioner Mother's parental rights. The GAL proffered to the circuit court that A.D. "desire[d] to have the relationship that she had with her mother prior to [R.T.] being involved in their home." The circuit court order specifically states that "[p]ursuant to West Virginia Code § 49-5-6(c), consideration was given to the wishes of [A.D.], but the [circuit] [c]ourt concludes that the wishes were made at an emotional time for the child and are a result of her desire to keep the family together." Based on the circumstances of this case, we find no error to warrant reversal.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: November 24, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II